22-8015, Council for Appellant, if you would make your appearance and proceed. I take it you hear me and that there are no issues there? Okay, you're muted, Mr. Schuster. You're still muted. Okay, you're not now. So whenever you're ready to proceed, please. May it please the court, counsel, Mr. Johnson. In 2013, a Wyoming court declared Andrew Johnson actually innocent of crimes for which he was then incarcerated. Word for word, that is the opening sentence of this court's 2020 published opinion, which remanded Mr. Johnson's case to the district proceedings. On a remand, the district court again dismissed Mr. Johnson's case. First, it granted two 12B6 motions, the Monell claim against the city, and Officer Spencer's 12B6 motion to dismiss the claim arising from the impermissibility of the identification process. Second, the district court granted summary judgment to Officers Spencer and Stanford on the first and second claims or causes of action against them, the Brady claims. Thus, there are two distinct factual records before the court as a basis for separate decisions. The complaints' factual allegations as to the third and fourth causes of action dismissed under 12B6, and the summary judgment factual record as to the first and second causes of action. The firewall between those two sets of decisions should be maintained. These two factual records show or share one very important common aspect, which is that the district court across the board failed to consider the totality of the circumstances as alleged in the complaint, accepting the well-pledged facts as true, and most importantly, did not draw all reasonable inferences in the non-moving party's favor. The district court should be reversed and remanded for further proceedings for the first through the fourth causes of action. In regard to the Monell claim, the city failed to constitutionally maintain adequate policies for the handling, preservation, and disclosure of crime scene photographs. Mr. Schuster, on the Monell claim, approaching it that way, doesn't that overlook or at least allie the issue of whether there is an underlying constitutional violation by an actor? In other words, if there is not a constitutional violation, the Monell claim falls anyway, right? Well, I should be prepared for that. The Monell claim regards city action. Yes. I'm sorry. Go ahead. I believe that if there is a policy and no action, it's kind of like a tree dropping in the wilderness. I think that that is true. It presupposes that there is some action that would be deemed as unconstitutional. Well, then let's cut to the chase and see whether there is such an action, and that's what I'm trying to do. As it relates to that, let's focus for a moment on the alleged unconstitutional identification claim. Why, even if we assume that Officer Spencer's identification procedure was suggestive, why is there a basis for a constitutional violation if there were adequate indicia of reliability? In other words, it appears to me that one could say that, make a colorable argument, at least, that there are adequate indicia of reliability that would undercut the basis for a constitutional violation. I assume you disagree with that, and if you do, why? We, of course, certainly do. To begin with, let's recognize that that cause of action that was dismissed was dismissed at the 12B6 stage before any discovery had been undertaken, and it required a particular analysis for the court to follow, which it did not. It can't just simply jump to the end. It has to conduct an analysis to determine whether or not that claim should stand. The claim is based upon clearly established constitutional provisions, which is you can't have impermissibly suggestive identification procedures. We allege that that was the case. That claim, in its basic form, was that Mr. Spencer falsely claimed he found the identification cards in front of the bathroom doorway, when, in fact, he found it earlier, while he and Mr. Raybuck were searching the apartment for an intruder. Further, Mr. Spencer falsely claimed that Mrs. Slagle, or Ms. Slagle, mentioned Mr. Johnson by nickname or initials before he showed her the idea, when, in fact, the naming occurred after he presented the idea, the photo identification. That is what the claim asserts. I thought the claim was predicated on the notion that the way that he presented the ID, i.e., the existence of a single ID presented to her, that that was unduly suggestive, and so that when she identified Mr. Johnson, she was doing it under his undue suggestion. I thought that's what you were getting at. Well, those are part of the falsely reported that he found it in front of the bathroom doorway, when, in fact, he had found it in the search that he and Mr. Raybuck undertook to search for the intruder, and he found it on the coffee table where Mr. Johnson had left it while he and Ms. Slagle were getting ready to smoke pot. If we accept that as true, how then do we link that fabricated evidence to the trial? How does that help exonerate your client, or what's the kind of trial tactic that you're seeking to assert here? Well, Your Honor, that is a bit uncertain, because this was a 12B6 dismissal. We have a claim that is constitutionally solemn. It was dismissed. We've had no opportunity then to engage in the discovery that should have been undertaken. If you're going to grant Iqbal and that a context-specific analysis should be undertaken, then that context-specific analysis should account for the fact that this incident happened in 1989. I know, but if I could. Nobody denies that Mr. Johnson was in that apartment, in that room. His ID was there. As I understand the record, he didn't deny he was there. The fact that the identification was on a bedside table or desktop or the bathroom floor, just explain to me why that matters. Well, it's fundamentally significant, because if one says that the ID was found in front of the bathroom door, then that places Mr. Johnson in front of the bathroom door. That's a completely different thing than Mr. Johnson being at a coffee table yards away in a living room area. It is impermissibly suggestive what happened, but it also has evidentiary prejudice that is outstanding. I'm confused, really. What happened at trial? Wasn't there an opportunity for defense counsel at trial to make some of these arguments? The missing photos, I assume they would have been missing at trial. The discrepancy on where the ID was found, wouldn't that have been known information at trial and could have been used one way or the other? Let me just say one thing, Judge. What I would like to do with this argument is divide it 12 and 3. I'm getting close to the 12, but let me answer your question. The trial was a tragedy. Mr. Johnson didn't do it. Mr. Johnson is innocent. All of the 1983 claims that we're presenting necessarily need to begin with the proposition that he's an innocent man. This isn't a case of inadequacy of counsel. This is a case of substantial 1983 claims that are properly pled and that were dismissed at the pleading stage, except for the summary judgment, improperly, without any opportunity to engage in discovery. And I know I'm watching the clock too, but I don't understand the import of your argument about this. You've said it a number of times that this was done at the pleading stage. Well, don't you accept that you have an obligation to plead the necessary facts to support the claim, the fact that even if it's on information and belief, the facts that you will later develop in discovery? And therefore, if you don't plead those facts, why wasn't the district court properly in a position to dismiss? I mean, so the fact that it was done on 12 v. 6, what difference does it make? That doesn't go to what your obligation is as the pleader of the complaint, right? Well, let me disagree, Judge. It is central to that. We wrote a complaint in 2017. He had been in prison for 24 years. It's not to be believed, in my view, that a claim for improper suggestivity is not made when you have alleged that the officer has lied, has found the ID in a location that he has lied about and lies about what she says. That is the specific charge in our complaint. Mr. Schuster, I'll give you a little more time in rebuttal, but what I don't understand is, and this goes back to Judge Tymkiewicz's point, how does lying about where the ID was found have anything to do with suggestivity? I mean, the cases that talk about suggestivity are staging of the ID, the showing of the ID, such that it makes it more likely that the identifier will identify the wrong person. What does the statement, I found it near the bathroom, have anything to do with suggestivity is what I am trying to understand, and I think that was where Judge Tymkiewicz was going. Your Honor, I think it's a two-part consideration. One is that in the police reports, he says that he found it in the bathroom. In fact, he did not. That's the allegation. He found it in the living to her, and so he is then the initiator of that process. Second, the cause of action specifically states that she then, his claim that she said A.J. first was wrong, and so he says, is this the guy? That is impermissibly suggestive, particularly when you are dealing with a woman who is sobbing, yelling, hysterical, is basically disrobed. Not disrobed. She has a robe on, but disheveled. All right. Why don't we conclude here, unless there are any further questions, and we will pick you up with some rebuttal time for you, Mr. Schuster. Well, thank you, Your Honor. Counselor Appel, please, if you would proceed, please. Thank you, Your Honor. May it please the court, counsel. My name is Sam Williams, and I represent the individual defendants in this case, Alan Spencer and the estate of George Stanford. Just so the court is aware, I am splitting time with Mr. Giles, who represents the city of Cheyenne. I would like to jump in where this court's questions were pointed at Mr. and sort of the facts that are relevant to that and the facts that aren't. It's clear in the district court's decision that it addressed the fact that the complaint does allege that Mr. Spencer found that ID on the living room table, but it's of no accord to the actual constitutional violation that we're dealing with here and the actions that Mr. Spencer is alleged to have taken to violate Mr. Johnson's rights, and that's presenting the ID in an overly suggestive manner by simply showing her the ID, which only had one photo depicting Mr. Johnson. So where that ID is found is not really relevant to the claim here that we're dealing with. Instead, we're looking, again, to whether or not that action was overly suggestive, and Mr. Spencer argues that it is not. Again, looking at the context of that action, we have a patrolman who's called to the scene by dispatch, who does a sweep of the apartment, finds the ID, and presents that ID to Ms. Slagle, who's in the bathroom and hysterical. Those are all facts established in the complaint. Under that factual circumstance, presenting the ID in that situation isn't impermissibly suggestive. Well, doesn't Stovall speak about the notion that it's widely condemned to have single ID photo presentations? It wasn't a photo presentation, I don't think, Stovall, but doesn't the Supreme Court frown upon that sort of thing? Stovall does say that, Your Honor, but I think we have to look at the facts again here. We have a police officer arriving at a scene minutes after an assault and presenting something that he found at the crime scene. But even if this court were to hold or find that Stovall controls here and that was impermissibly suggestible, we still look at the indicia of reliability. I think Stovall supports the district court's conclusion here. Counsel, let me ask you a question about this. Are you aware of a case regarding the suggestivity of a photo array or a single photo where the person being shown the photo knew the person in the photo? I'm not aware of any cases at this time, Your Honor, but I think that's probably the most suggestive case. Specifically, the fact that even in the complaint, Mr. Johnson admits that he had spent time with Ms. Slagle prior in the evening, had been to her apartment, which is when he claims he left his identification, and that Ms. Slagle knew Mr. Johnson at the time of the assault. So that factor, I think, is again the weightiest in this situation. And unlike in Stovall where we have a potential deathbed statement, here we have even stronger evidence, specifically that prior relationship between the victim and Mr. Johnson. With regard to the other factors that this court looks at in terms of the ability of Ms. Slagle to view Mr. Johnson, this is not something that took place on a dark street corner. It took place in an apartment that was dark, but it was an assault that took place in close proximity. In terms of the degree of attention, Ms. Slagle stated that at trial, as alleged in the complaint, that she didn't have any issue perceiving things at the time. I believe the complaint says that it was dark and she was not able to see things. So I think the reliability supports the fact that this was not an impermissible lineup. Another important factor here is the time between the confrontation with the identification and the alleged assault. Here we're talking about minutes. Most of the cases that have been cited talk about days or weeks, and so that factor weighs in favor of finding that the identification was reliable and that Mr. Spencer was entitled to qualified immunity on that claim, even at the 12B6 stage. I'd like to move on to the summary judgment phase if there are no further questions about the application of evidence claim. If I may ask you about that, as it relates to the testimony of Officer Ray Buck, as I understand it, he testified that it was his standard practice to photograph a person at the beginning and end of the shoot, and he also testified he took photos of Ms. Slagle's inner thigh. Well, if those photos were not found, if I understand that they weren't, doesn't that suggest that there are missing photos? That is the only evidence that exists after a year of discovery to give any indication that photos of the additional photos will say could have existed, specifically that flash card based on Mr. Ray Buck's practice and that inner thigh picture. From the contemporaneous records, the only photos that are mentioned by Mr. Ray Buck and the only photos that he states in his affidavit concludes that he took based on that report are photographs of the broken glass and the door on the floor inside the apartment, and then the inner arm, the thigh picture that Your Honor mentioned. Is there any evidence that photos were used as evidence at the rape trial? I believe, yes, I believe an officer would walk through, as you would typically see in a criminal trial, to set the stage of where the assault occurred. And I believe Mr. Spencer was presented a photograph to show where he found the ID. Well, from that, can't we infer that, you know, at least some of the photos disappeared between trial and discovery? That's potentially one inference, Your Honor, but I don't think it's the only one. But even if we were to conclude that some photographs did exist, we still have several layers of abstraction relying on just that evidence and those inferences to get where Mr. Johnson needs to be. And he can't make that showing here, specifically when we're talking about materiality and black or bad, yeah, and bad faith in this case. So going with the court and agreeing that some potential photographs exist, there's no evidence that those photographs show the interior of the apartment. There's no photographs or there's no evidence that indicates what those interior photographs would have shown, whether they would have shown that living room table or the floor or the bedroom where Mr. Johnson alleges his eyeglasses were placed several days after the assault. So there's no evidence. Was the trial record available to the Exoneration Council back in 2012 or whenever that occurred? Is there any evidence that photos were or were not in the criminal proceedings at that time? I'm not aware, Your Honor, that the Exoneration is based on DNA evidence. Presumably the DNA evidence that was still in the file. So whoever, you know, obtained the DNA samples also would have had access to everything else that was in the prosecutor's file, correct? Correct, Your Honor. And then in terms of the court file, that would be a public record that would be searchable, assuming it wasn't destroyed. And based on the Rule 26 disclosures, it's my belief that it was not, as the entire transcript was produced at that stage. And just to be clear, when you said going with the court, you weren't making any concessions. You were just saying that assuming that it was, in fact, the case that there was missing evidence, there would be abstractions, levels of abstractions still to be reached, right? That's correct, Your Honor. I'm not conceding anything. I was just following up on the court's question. And that's fine. I just wanted to be clear for the record where you stood. Please, go ahead. Sorry, I thought I was expecting a question there. So again, if we're looking at Mr. Johnson's burden in summary judgment, he had to show both the existence of the photographs and materiality. And frankly, photos of, if they did exist, of a coffee table that showed the marijuana and the ID would not have been exculpatory in this case. It would have just potentially opened the door if Mr. Johnson decided to present that evidence. So, I'm not going to go into the details of that. I'm just going to point out that there was no evidence to testimony about Mr. Johnson committing another crime. In terms of the identification, all the contemporaneous records indicate that the photographs were taken after the ID was picked up. With regard to the bedroom, there's no evidence in the record showing the existence or non-existence of Mr. Johnson's glasses in that apartment's bedroom. So, even if an inference gets Mr. Johnson to the existence of some photographs, it doesn't establish what those photographs showed or that they would have been exculpatory. Let me ask about this ID picked up thing. I thought that part of the argument was if the photographs were taken, it would have been taken of the ID being on the table. Why is it your belief that the ID would have been picked up? And wouldn't that have been not necessarily a good procedure to pick up the ID before a photo could be taken of the ID? We don't have any independent recollection of really what occurred in the record. We have the contemporaneous records, which indicate that the ID was picked up and used to question Ms. Slagle. And the testimony from Officer Spencer that, in fact, the ID was near the bathroom, right? Correct. Okay. Was Ms. Slagle sued? She was not in this case, Your Honor. Mr. Spencer and Mr. Stanford are the only individual defendants. So, being mindful of counsel's time, I allow him to take up the rest. Let me ask you one more question, and then maybe Judge Holmes will indulge your co-counsel with a short extra minute or so. Sure. Is there anything in the record as to the timing of when the pictures were taken? I mean, presumably they were taken after Ms. Slagle was questioned and shown the ID? The only reports that speak about or the only evidence that speaks about photographs is Mr. Raybuck's report, which does indicate that they swept the apartment and that Ms. Slagle was pictured and then went to the hospital to take pictures of Ms. Slagle. But that report's the only evidence. All right. Mr. Giles? May it please the Court. My name is Norman Giles, and I'm privileged to represent the City of Cheyenne, Wyoming. I'd like to begin with an answer to the question asked before. If there was no constitutional violation, then there can be no claim against the City. I think the City of Los Angeles v. Heller addressed that issue specifically for 75 U.S. 797 in 1986. I want to just touch a couple of other questions very briefly. I think as far as the suggestion that the identification was improper, I think it has to be understood in context that Ms. Slagle was actually with Mr. Johnson that entire evening. She knew him personally. She called him by his nickname with his initials. It's not that somehow an officer talked her into identifying somebody that she might not have known. It seems to me that's really got to be an important part of this whole evaluation of how suggestive that identification was. Are those facts, are you limiting that to what's alleged in the complaint? I am, yes. And that's another point here is we've gotten a lot of argument about what Mr. Johnson disputes, but Mr. Johnson basically has to live with the facts that are in his complaint. And most of these facts are actually, they are alleged in the complaint all the things, many of the things that he's disputing are actually alleged in the complaint. The district court made the right decision in determining that the complaint failed to state a claim. The district court properly applied the procedure outlined by Ashcroft versus Iqbal, and it applied this court's precedence in Waller versus City and County of Denver and other Supreme Court precedents in its analysis of the claims against the city. There's a specific procedure the Supreme Court has for doing this, and that procedure is for us to take the allegations in the complaint that are actually factual allegations and consider those and then take away all the conclusions or assertions and legal arguments and then determine whether those factual allegations actually show a complaint against the city. That's exactly what the district court's order shows it did in this particular case. Mr. Johnson, he also concedes that he doesn't even claim that these policies that he wants to subject the city to liability for were in any way unconstitutional. He actually says expressly that he doesn't contend that these policies of the city were constitutionally required at all. His argument basically is if the city had other policies, they may have prevented a constitutional violation from occurring, but the precedents that control this case demonstrate clearly that merely potentially having a policy that could have stopped a constitutional violation is not enough to state a claim under Monell. Canton v. Harris, Oklahoma City v. Tuttle, and in Connick, they all basically said that in virtually every instance where a person has had his or her constitutional rights violated by a city employee, a section 1983 plaintiff will be able to point out something the city could have done to prevent the is here. The other shortcoming in the complaint is there has to be some factual allegation that shows that the city policy is the moving force that directly caused the constitutional violation, and simply an allegation that maybe if we had a different policy, this wouldn't have happened completely misses the boat on the city policy being what actually caused the constitutional violation, which is what's required to support a claim against the city. Remind me, Mr. Giles, and you're coming up on, I think, the end of your argument here, but remind me whether in the complaint, are there any allegations that there were prior incidents of this such that the city would have been aware that its policies were inadequate prior to this is a wrongful conviction, that kind of thing? No, Your Honor, that's the problem. Basically, this complaint depends entirely on this particular incident, and one incident over 30 years, that's not a custom make in Cheyenne. He's basically, the whole argument is premise solely on this incident. So this isolated incident is a problem for two reasons. Number one, it doesn't demonstrate any policy or custom. It also fails to establish deliberate indifference of the city's policymaker because the city would have no reason to know 30 years over that 30 years ago that there was a problem with this particular photograph taking or the way that the officer presented that particular ID without other instances where that's come up. I'm going to have to respectfully cut you off. Thank you both at the least for your arguments. Mr. Schuster, we'll give you two minutes of rebuttal time. Okay. Your Honor, in our opening brief, there's a very telling sentence, which is, why did it pop in to Ms. Slagle's mind to mention Mr. Johnson? The, in all of this discussion about the photo identification, it somehow left behind that Andrew Johnson wasn't there. Andrew Johnson didn't assault this woman. Andrew Johnson did not penetrate her. Barney Hagberg did. And so how is it then that his name pops up into all of this? And it has to do centrally with the fact that Spencer lies. He takes the ID, he presents it to her, and she says, oh, Andrew Johnson. It's completely false. But the falsehood is her falsehood. It doesn't matter if he, maybe he was lying, but the suggestivity doesn't depend on whether he's lying or not. It depends on him presenting her with a photograph or an ID of somebody. The suggestivity comes from that fact, that because of Officer Spencer alone, he then presents that to her for this distraught woman who is kind of in an open bathrobe, who is hysterical and screaming. And that then is the evidence that comes in. Andrew Johnson wasn't there. He didn't do anything to this woman. But his name then gets dragged into it. And that is kind of the first step of all of this. If that name had not come up, Andrew J. Johnson, my friend, would not have been charged. Mr. Schuster, I feel the need to make sure I understand your position on this. Is it your view that Ms. Slagle was lying or your view that Ms. Slagle actually made a mistaken identification of Mr. Johnson? Now, Mr. Johnson was undisputedly in that house, in that apartment earlier. So, I mean, is there anything in the record that speaks to that question, which one it was? I'm not sure what you mean by which one it was. Whether at the time that she identified Mr. Johnson, that she was lying or whether she, in fact, mistakenly identified Mr. Johnson. Because, of course, we know as things turned out, he was exonerated. So he didn't commit the rape. But the question is, when she made that identification, is there anything in the record that speaks to whether, in fact, she was lying to cover for her boyfriend or for whatever reason or whether she, in fact, was mistaken? I mean, number one, is there anything in the record on that? Two, well, let's stick with that. Is there anything in the record on that point? She lied. I mean, he didn't do it. He wasn't there. He wasn't the assailant. She gets prompted by Spencer. I don't think it was mistaken. But remember, this is dismissed at 12B-6. We don't have the further evidence. It's been disallowed. And that further evidence would also involve John Doe's. But the issue doesn't have to do with whether she was mistaken. She wasn't. Johnson didn't do it. Why does his name come up? Because this officer picks up a photo identification on a table, brings it to her, and suggests it. Is this him? All right. We have to round it out. Of course. To finish on that point, wouldn't any investigator that found a male identification in the apartment do exactly the same thing as Spencer did? Not properly. What would have been the proper procedure then? Not to have suggested that, not to say, is this the guy? It would have been instead to talk about who did it. What was his physical identity? If you look at the photo strip, it's a series of six images, and it's on page 10 of our brief. The image on the left is an image in the third floor as Mr. Raybuck is leaving the apartment. It is as if you were reading a Shakespeare play. You open the first page, and the director's notes are exeunt right. You say, well, what was the play? What was the scene? That's the problem. Did Mr. Johnson sue Ms. Slagle? I don't believe so. The problem here is not Ms. Slagle. The problem is a failure in our judicial system. Other than the Japanese incarceration at Heart Mountain, this is the period. That's the issue. There's civil rights issues. Where are the photographs? There's a photograph of him exiting or of the exit stairway, but no photographs in spite of the fact that he said that he would have a placard, and in spite of the fact that he said he loaded a full roll of film, and in spite of the fact that he said that he took pictures of her inner thigh. Anything else from my colleagues? All right. Thank you, counsel, for your arguments. Cases submitted. Thank you, your honors.